UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANCE ERICKSON, on behalf of himself and others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>FELLINI SOHO CORP. d/b/a FELLINI SOHO, PYRAMID APEX CORP. d/b/a FELLINI WEST VILLAGE, FELLINI CHELSEA CORP. d/b/a FELLINI CHELSEA, and FRANCO NORIEGA,<br><br>　　　　　　Defendants. | 25 CV 1344 (JPO) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF (UNOPPOSED) MOTION FOR CLASS CERTIFICATION**

D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and proposed Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    BACKGROUND .................................................................................................. 3

   A.    Procedural History ........................................................................................ 3

   B.    Defendants' NYLL Violations....................................................................... 4

   i.    Defendants Misappropriated Employees' Tips.............................................. 4

   a.    Defendants illegally retained a portion of tips......................................... 5

   b.    Defendants illegally distributed tips to a manager ................................. 6

   B.    Defendants Unlawfully Paid Class Members On A Biweekly Basis ............. 8

   C.    Defendants Failed To Give Class Members The Wage Notices Required Under New
         York's Wage Theft Prevention Act ................................................................ 8

III.   ARGUMENT........................................................................................................ 9

   A.    Class Certification Against Defendants Is Appropriate Prior To Seeking A Default
         Judgment ........................................................................................................ 9

   B.    Plaintiffs Satisfy The Requirements For Class Certification Under Fed. Civ. P. 23  10

   i.    Plaintiffs Satisfy the Requirements of Rule 23(a) ........................................ 10

   a.    Numerosity – Rule 23(a)(1)...................................................................... 11

   b.    Commonality – Rule 23(a)(2).................................................................... 11

   c.    Typicality – Rule 23(a)(3) ......................................................................... 13

   d.    Adequacy – Rule 23(a)(4).......................................................................... 14

   e.    Rule 23(a)'s implied ascertainability requirement................................... 15

   ii.   Class Certification Under Rule 23(b)(3) Is Appropriate................................ 16

   a. Common questions of law and fact predominate........................................ 16

     b. A class action is superior to other methods of adjudication ............................................ 17

   iii.    Plaintiffs' Counsel Should be Appointed as Class Counsel .......................................... 18

   iv.    The Proposed Notice Satisfies The Requirements Of Rule 23(C)(2)(B) ....................... 18

   C.    The Court Should Permit Plaintiffs To Take Discovery From Defendants And Third-Parties ............................................................................................................................... 19

IV.    CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Acticon AG v. China N.E. Petroleum Holdings Ltd.,*
    687 F. App'x 10, 12 (2d Cir. 2017)…………………………………………..9

*Andrade-Barteldes v. Valencia*, No. 23 CV 495,
    2023 U.S. Dist. LEXIS 215247 (S.D.N.Y. Dec. 4, 2023) ................................ 12, 17

*Argudo v. Parea Grp. LLC*, No. 18 CV 0678,
    2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sept. 24, 2019)............................. 18

*Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)………………..19

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013)................................................. 5,6,7

*Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022) ........................................................ 13

*Beh v. Community Care Companions*, No. 19 CV 1417,
    2021 U.S. Dist. LEXIS 197316 (W.D.N.Y. Feb. 1, 2021) ............................... 8

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010).................................................................. 16

*Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002).................... 5,7

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003)............................. 15

*Encalada v. SDNY 19 Mad Park, LLC,* No. 13 Civ. 1926 (PAC)
    (S.D.N.Y. Nov. 16, 2014)……………………………………………………7

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) ............................................ 10

*Frankiewicz v. Manhattan Cryobank, Inc.*, No. 20-cv-5157 (JLR) (JW),
    2023 U.S. Dist. LEXIS 157903 (S.D.N.Y. Aug. 16, 2023)……………………11, 20

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ........................................ 12

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    281 F.R.D. 100 (E.D.N.Y. 2011)........................................................................ 14

*Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 4, 2019)................................ 9

*Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21 CV 1347,
    2024 U.S. Dist. LEXIS 48475 (S.D.N.Y. Mar. 18, 2024)…………13, 14, 16, 17

i

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)............... 15

*Henriques v. William James Bushell Corp.*, No. 23-cv-2990 (LJL),
    2023 U.S. Dist. LEXIS 155157 (S.D.N.Y. Sep. 1, 2023)………………………19

*Holness v. Nat'l Mobile TV, Inc.*, No. 09 CV 2601 (KAM)(RML),
    2011 U.S. Dist. LEXIS 28627 (E.D.N.Y. Jan. 6, 2011)…………………………..19

*Iglesias-Mendoza v. La Bella Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ............... 12

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)........................ 16

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............. 17

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ................................... 11, 12

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) .................................. 10

*Katz v. Curis Pharmacy, LLC*, No. 22-CV-644 (VSB),
    2023 U.S. Dist. LEXIS 158369 (S.D.N.Y. Sep. 7, 2023)…………..20

*Kreit v. Byblos Bank S.A.L.*,
    2023 U.S. Dist. LEXIS 53311 (S.D.N.Y. Mar. 28, 2023)……………………..19

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ................................... 14

*Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024)……………..7

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ..................................................... 14

*Martinez v. Ayken, Inc.*, No. CV 13-7411,
    2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016)................................ 13, 14

*Marzovilla v. N.Y. State Indus. Bd. of Appeals*,
    127 A.D.3d 1452 (N.Y. App. Div. 3d Dep't 2015) ......................................... 7

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299,
    2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014)………………………7, 13, 16, 18

*Murphy v. Lajaunie*, No. 13 CV 6503,
    2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ................................. 13

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)....................................................... 18

*Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266,
    2013 U.S. Dist. LEXIS 107561 (S.D.N.Y. July 31, 2013) ............................... 7

*Pichardo v. Bos. Post Food Corp.*, No. 22-CV-9157 (JPO),
    2025 U.S. Dist. LEXIS 72222 (S.D.N.Y. Apr. 16, 2025)..........................1, 9,

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).......................................................... 10, 14

*Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366 (S.D.N.Y. 2017) ................ 13

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)........................... 15, 16, 17

*Shahriar v. Smith & Wollensky Rest. Group*,
    659 F.3d 234 (2d Cir. 2011)......................................................................*passim*

*Shepard v. Rhea*, No. 12 CV 7220,
    2014 U.S. Dist. LEXIS 158189 (S.D.N.Y. Nov. 7, 2014)................................. 12

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) .................................. 13, 15, 16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*,
    546 F.3d 196 (2d Cir. 2008)........................................................................... 10

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
    2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006)............................... 17

*Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116,
    2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)................................... 17

*United Union of Roofers, Waterproofers, & Allied Workers Local No. 210 v.
    A.W. Farrell & Son, Inc.*, 547 F. App'x 17 (2d Cir. 2013)............................... 8

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012) ......................... 7

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018).................................................... 10

*Vazquez v. 142 Knickerbocker Enters., Corp.,* No. 13-CV-6085,
    2024 U.S. Dist. LEXIS 183551, at *7 (E.D.N.Y. Oct. 7, 2024)...................7

*Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956,
    2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016).............................. 14, 16

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................. 11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011)............. 14

*Widjaja v. Kang Yue USA Corp.*, No.09-CV-2089 (RRM)(CLP),
2011 U.S. Dist. LEXIS 109007 (E.D.N.Y. Sep. 26, 2011)…………………..6

*Winegard v. Crain Communs*., Inc., No. 20-CV-01509,
2021 U.S. Dist. LEXIS 60964 (S.D.N.Y. Mar. 30, 2021)………………..………9

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018)………………..…...16

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 26 ....................................................................................................... 19

Fed. R. Civ. P. 55 ....................................................................................................... 19

N.Y. Lab. L. § 191 ....................................................................................................... 8

N.Y. Lab. L. § 195 ............................................................................................... 8, 9, 13

N.Y. Lab. L. § 196-d ............................................................................................. *passim*

N.Y. Lab. L. § 198 ....................................................................................................... 9

Plaintiff Vance Erickson and opt-in Plaintiffs Peyton Allen and Hannah Everett (collectively, "Plaintiffs") submit this memorandum of law in support of their motion (1) for certification of New York state wage and hour claims pursuant to Fed. R. Civ. P. 23, and (2) for permission to conduct discovery relating to damages in advance of their motion for a default judgment.[1]  Given that all Defendants have defaulted, no opposition should be considered and Plaintiffs respectfully request the Court issue a ruling solely based on the moving papers.

## I.  PRELIMINARY STATEMENT

This action asserts New York Labor Law claims on behalf of all tipped food-service employees (excluding managers) who worked at the Fellini food establishments in Soho, Chelsea and the West Village in Manhattan at any time on or after February 14, 2019.  By this motion, Plaintiffs seek to certify the aforementioned class with respect to their claims that Defendants violated New York law by (1) misappropriating/retaining a portion of food-service employees' tips (2) paying servers on a biweekly basis; and (3) failing to provide the wage rate notices required under N.Y. Lab. L. § 195(1).

This case is different from the Court's recent decision in *Pichardo v. Bos. Post Food Corp.* as Plaintiffs' allegations and the evidence here establish company-wide violations. No. 22-CV-9157 (JPO), 2025 U.S. Dist. LEXIS 72222 (S.D.N.Y. Apr. 16, 2025). Here, Plaintiffs allege and adduce proof that Fellini misappropriated and misallocated pro rata portions of *all* class members' tips.  As an example, Plaintiffs allege (without opposition) that Defendants deducted 5% from the tips that customers left at the restaurant and deducted $50 from the tips at each location each week. This deduction applied equally to all the tipped employees at Fellini. In fact, as outlined below,

---

[1]  With this memorandum of law, Plaintiff submits the June11, 2025 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Ex. [number]") and the June 11, 2025 declaration of Vance Erickson, the June 11, 2025 declaration of Peyton Allen, and the June 11, 2025 declaration of Hannah Everrett.

Defendants' own accountant admitted to Fellini employees that Defendants implemented a common policy.  The accountant wrote in a text message to employees that Defendants "have been handling the tip system like this since the beginning of Fellini and we do it like this throughout all the stores."  Thus, there is no doubt that all class members here suffered the same injury, and a decision on Defendants' underlying liability would apply commonly to all class members.

      The Fed. R. Civ. P. 23(a) ("Rule 23") prerequisites are also handily met because (1) the number of Class Members satisfies numerosity, (2) the claims involve policies to which all Class Members were subject, (3) Plaintiffs' claims and circumstances are the same as the absent Class Members they seek to represent in that all have been injured by the same violations, and all will benefit from the relief sought; and (4) Plaintiffs and their counsel will vigorously prosecute this action and adequately represent the Class.  Rule 23(b)(3) is appropriately applied because the common factual and legal issues predominate. Further, a class action is superior to requiring that putative Class Members pursue individual actions.

      For the reasons set forth below, Plaintiffs respectfully request that the Court:

(1)    Certify a Class defined as all tipped food-service employees (other than managers) who worked for Defendants at the Fellini Coffee food establishment sin Soho, Chelsea and the West Village at any time on or after February 14, 2019;

(2)    Appoint Plaintiffs as Class Representatives;

(3)    Appoint Plaintiffs' counsel as Class Counsel;

(4)    Order Defendants to produce to Plaintiffs a Microsoft Excel list, in electronic format, of all Class Members' names, last known address, all known telephone numbers, and dates of employment;

(5)    Authorize the mailing of the proposed Notice to all Class Members; and

(6)    Permit Plaintiffs to conduct discovery.

## II.    BACKGROUND

### A.  Procedural History

Defendant Fellini Soho Corp. d/b/a Fellini Soho owns and operates Fellini, a coffee shop in Soho, Manhattan. Ex. 1 ("Compl.") ¶ 8.  Defendant Pyramid Apex Corp. owns and operates Fellini, a coffee shop in the West Village of Manhattan. *Id*. ¶ 10.  Defendant Fellini Chelsea Corp. d/b/a Fellini Chelsea owns and operates Fellini, a coffee shop in Chelsea, Manhattan. *Id*. ¶ 12. (The corporate Defendants are hereinafter collectively referred to as "Fellini.")  Defendant Franco Noriega owns and operates each of the Fellini food establishments. *Id*. ¶¶ 15-16.

Plaintiff Vance Erickson worked as barista and server at Fellini in Soho and the West Village from September 2024 to January 2025. *Id*. ¶ 17; Erickson Decl. ¶ 3.  Plaintiff Peyton Allen has worked at Fellini in Soho and the West Village since August 2024. Allen Decl. ¶ 3.  Plaintiff Hannah Everett  has worked at Fellini in in Soho and the West Village August 2024 to January 2025. Everett Decl. ¶ 3.

The Fellini food establishments operate as a single, integrated enterprise as they are owned and operated in tandem. Compl. ¶ 30; Erickson Decl. ¶ 4; Allen Decl; ¶ 4. Everett Decl. ¶ 4.  All of the Fellini locations have the same owner and share management employees. Compl. ¶ 31; Erickson Decl. ¶ 5; Allen Decl. ¶ 5; Everett Decl. ¶ 5.  For example, Lina Jaramillo was the manager at multiple Fellini locations. Compl. ¶ 32; Erickson Decl. ¶ 6; Allen Decl. ¶ 6; Everett Decl. ¶ 6. For example, Plaintiff Erickson was initially hired by Ms. Jaramillo to work as a bartender and server at Fellini Soho. Compl. ¶ 33; Erickson Decl. ¶ 7.  In November 2024, Ms. Jaramillo asked Plaintiff if he would transfer to Fellini West Village, and he agreed to do so. Compl. ¶ 34; Erickson Decl. ¶ 8.  At Fellini West Village, Ms. Jaramillo continued to be Plaintiff Erickson's manager. Compl. ¶ 35; Erickson Decl. ¶ 9.  Plaintiff Everret was similarly hired by Ms.

Jaramillo to work at the Soho location and eventually transferred to the West Village location where Ms. Jaramillo continued to be Plaintiff Everett's manager. Everett Decl. ¶¶ 6-8. Fellini also subjects their employees to the exact same payroll practices. For example, as outlined below, all of the Fellini locations force employees to share tips with management employees, force employees to give the restaurants' ownership a portion of their tips, and pay their employees on a bi-weekly basis. Erickson Decl. ¶¶ 10-11; Allen Decl. ¶¶ 10-11; Everett Decl. ¶¶ 10-11.

As is relevant to this motion, the operative complaint alleges, *inter alia*, that Defendants violated the New York Labor Law by (1) misappropriating portions of employees' tips (2) paying tipped employees late; and (3) failing to provide the wage notices required under N.Y. Lab. L. § 195. Compl. ¶¶ 29-70.

Defendants never filed an answer to the Complaint and certificates of default were entered against all Defendants on April 9, 2025. *See* Ex. 2.

### B. Defendants' NYLL Violations

#### i. Defendants Misappropriated Employees' Tips

N.Y. Lab. L. § 196-d provides, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." Defendants violated N.Y. Lab. L. § 196-d in three different ways by

(1) inexplicably deducting and retaining 5% of all tips earned by tipped employees;

(2) misappropriating $50 in tips per week per Fellini location and giving those tips to the cafes' accountant for the tip calculations he performed; and

(3) requiring tipped employees to share their tips with management employees.

*See Shahriar v. Smith & Wolensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011) ("New York law [] prohibits employers from requiring tipped employees to share tips with non-service employees or managers."); *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013); *cf. Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (under FLSA, "the practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping").

Tips at each Fellini location were allocated using a tip pool system. That is, the tips were shared between the food-service employees who worked each shift. In reality, as described below, Defendants retained a portion of the tips for themselves and to pay their accountant, and they also included managers in the tip pool.

### a. Defendants illegally retained a portion of tips

Defendants automatically deducted and retained 5% of the tips customers left at Fellini. Erickson Decl. ¶ 12; Allen Decl. ¶ 12; Everett Decl. ¶ 12. Defendants also paid their accountant, Danny Zambrano, $50 per location per week from the tips for the tip calculations he performed. Erickson Decl. ¶ 13; Allen Decl. ¶ 13; Everett Decl. ¶ 13. In fact, Mr. Zambrano admitted to this scheme in text messages he sent Plaintiff Erickson and his coworkers. Specifically, Defendants tipped employees have group text message chats in which they discuss all aspects of each restaurant's operations. Erickson Decl. ¶ 14; Allen Decl. ¶ 14; Everett Decl. ¶ 14. In one such group text conversation, employees asked Mr. Zambrano to provide an explanation as to why the service staff received less than the total amount of the tips customers left each week. Mr. Zambrano responded that the restaurants took 5% from all the tips as a "commission." Mr. Zambrano further informed the employees via text message that "all locations handle tips and they

pay me a flat fee of $50." Erickson Decl. ¶ 15; Allen Decl. ¶ 15; Everett Decl. ¶ 15.  Bizarrely, Mr. Zambrano proceeded to state that "Management can't handle tips as per law it has to be done by employees." Erickson Decl. ¶ 16; Allen Decl. ¶ 16; Everett Decl. ¶ 16.  Finally, and most significant to the instant motion, Mr. Zambrano went on to state that "We have been handling the tip system like this since the beginning of Fellini and we do it like this throughout all the stores." Erickson Decl. ¶ 17; Allen Decl. ¶ 17; Everett Decl. ¶ 17. *Widjaja v. Kang Yue USA Corp.*, No. 09-CV-2089 (RRM)(CLP), 2011 U.S. Dist. LEXIS 109007, at *14 (E.D.N.Y. Sep. 26, 2011) (granting summary judgment to plaintiffs where employer inexplicably retained portions of employees' tips); *Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085, 2024 U.S. Dist. LEXIS 183551, 2024 WL 4437164, at *7 (E.D.N.Y. Oct. 7, 2024) (holding that an "employer or his agent is prohibited from sharing in customer-service employees' tips or requiring those employees to share tips with employees who do not perform direct customer service").

### b.  Defendants illegally distributed tips to a manager

The New York Court of Appeals has set the following standard for determining whether supervisory employees are ineligible to receive tips:

> We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation … *Meaningful authority, not final authority, should be the standard*.

> In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.

6

*Barenboim*, 21 N.Y.3d at 473 (emphasis added).  If an individual has meaningful authority over employees, she may not receive tips even if she provides direct service to customers.  *See Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910, at *23 (S.D.N.Y. Jan. 10, 2014) ("Defendants' argument that [individuals with meaningful authority] were permitted to share tips for shifts in which they provided customer service is contrary to case law establishing that, under NYLL, the 'practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.'") (quoting *Chung*, 246 F. Supp. 2d at 229); *see also Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266, 2013 U.S. Dist. LEXIS 107561, at *9-10 (S.D.N.Y. July 31, 2013).

Here, the complaint alleges that Defendants require tipped employees to share tips with management employees. Compl. ¶ 41.  These management level employees had the authority to, among other things hire, fire and schedule employees at Fellini, which is sufficient to render them ineligible to receive tips. *Id*. ¶ 42.  *See, e.g.*, *Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (PAC), at 9:8-10:1 (S.D.N.Y. Nov. 16, 2014) (submitted as Ex. 3) (finding after bench trial that that person who interviewed, disciplined, and fired employees and created an initial schedule – but did not have ultimate authority over any of these matters – was ineligible to receive tips under § 196-d); *Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127 A.D.3d 1452, 1454-55 (N.Y. App. Div. 3d Dep't 2015) (finding that individual who participated in hiring process and had input into schedules was ineligible to participate in tip pool); *Mangahas v. Eight Oranges Inc*., 754 F. Supp. 3d 468, 501 (S.D.N.Y. 2024) (granting employees' motion for summary judgment on claim that restaurant required employees to share tips with employees who disciplined, participated in hiring and firing process, and provided input in employee scheduling).

### B.  Defendants Unlawfully Paid Class Members On A Biweekly Basis

N.Y. Lab. L. § 191(a)(1)(i) requires employers to pay "manual workers" "weekly and not later than seven calendar days after the end of the week in which the wages are earned."  The New York Department of Labor ("NYDOL") "has long interpreted the term [manual worker] to include employees who spend more than 25 percent of their working time performing physical labor[,]" and courts have applied this interpretation.  *Beh v. Community Care Companions*, No. 19 CV 1417, 2021 U.S. Dist. LEXIS 197316, at *7 (W.D.N.Y. Feb. 1, 2021) (internal quotation marks omitted). It is well-settled that restaurant waitstaff are "manual workers" under the NYLL.  *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (waitstaff are manual workers under NYLL); *Beh*, 2021 U.S. Dist. LEXIS 197316, at *7 (noting that "cooks, wait staff, . . . and pizzeria workers have been found to be 'manual workers'" under the NYLL).  Here, Defendants' tipped employees' (such as baristas and servers) duties consisted of physical tasks such as setting tables, serving customers, clearing tables, cleaning, and preparing food. Erickson Decl. ¶ 23; Allen Decl. ¶ 23; Everett Decl. ¶ 23.  Although Class Members were manual workers, Defendants unlawfully paid them on a biweekly basis.

### C.  Defendants Failed To Give Class Members The Wage Notices Required Under New York's Wage Theft Prevention Act

Under N.Y. Lab. Law § 195(1), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute.  Defendants were required to give putative Class Members "at the time of hiring" a notice stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of

business, and a mailing address if different; [and] the telephone number of the employer[.]

N.Y. Lab. L. § 195(1)(a).

As set forth in the complaint, Defendants did not provide Class Members with any Wage Notices at the time of hire.  Complaint ¶ 49.  As a result, Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-b).  *See Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433, 2019 U.S. Dist. LEXIS 163259, at *12-16 (S.D.N.Y. Sept. 4, 2019).

### III.    ARGUMENT

#### A.    Class Certification Against Defendants Is Appropriate Prior To Seeking A Default Judgment

As this Court recently opined, "[i]n circumstances where a defendant has defaulted, a plaintiff may pursue class certification if it does so before 'entry of default judgment.'" *Pichardo*, 2025 U.S. Dist. LEXIS 72222, at *5 (Oetken J.) (quoting *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (summary order); *Winegard v. Crain Communs., Inc.*, No. 20-CV-01509, 2021 U.S. Dist. LEXIS 60964, 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021) (denying certification where the plaintiff "failed to file a motion for class certification pursuant to Rule 23," and where "his motion for default judgment does not address Rule 23 class certification"). That is true even where, as here, the motion for class certification is filed after the plaintiff has requested and obtained a certificate of default from the clerk of the court. *Pichardo,* 2025 U.S. Dist. LEXIS 72222, at *5 (citations omitted). "A motion is not untimely if a defendant[] had ample notice that the action was a putative class action, such as where the caption and prayer for relief in the plaintiffs' prior complaints indicated its intent to seek class status . . . ." *Id.* *5-6 (cleaned up). Here, where the complaint clearly indicates that this action is being pursuing a class action (Compl. ¶¶ 21-28) and Plaintiffs have obtained a certificate

of default but not yet moved for a default judgment, the Court may consider a motion for class certification.

### B. Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23

Rule 23 provides that certification is appropriate where, as here, plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). While the Court must ensure that each Rule 23 requirement is met, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)). "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common*.'" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202. Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction." *Vargas*, 324 F.R.D. at 324 (citations omitted). Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (citations omitted).

### i. Plaintiffs Satisfy the Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### a.  Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pr. 23(a)(1).  Numerosity is presumed satisfied if the class has at least 40 members. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  Here, the complaint clearly alleges that upon information and belief, there are more than fifty (50) members of the Class. Compl. ¶ 23. *See, e.g., Frankiewicz v. Manhattan Cryobank, Inc.*, No. 20-cv-5157 (JLR) (JW), 2023 U.S. Dist. LEXIS 157903, at *8-9 (S.D.N.Y. Aug. 16, 2023) (finding numerosity satisfied based on allegations in the complaint alone) *report and recommendation adopted by Frankiewicz v. Manhattan Cryobank, Inc*., 2023 U.S. Dist. LEXIS 157061, 2023 WL 5748115 (S.D.N.Y., Sept. 6, 2023).  Moreover, Defendants' own tip calculation records which were provided to Plaintiffs each week record at least 50 different individuals who worked at the various Fellini locations and received tips during the time that Plaintiffs worked for the company. Erickson Decl. ¶ 22; Allen Decl. ¶ 22; Everett Decl. ¶ 22.  Accordingly, numerosity is easily satisfied.[2]

### b.  Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

---

[2] In this motion, Plaintiffs also seek discovery from Defendants and Defendants' third-party payroll providers relating to, among other things, the identities of all tipped employees who worked for Fellini's during the relevant time period. Once Plaintiffs receive that information, they will be able to identify the precise number of Class Members in the case.

(2011)).  Put another way, commonality requires a "common contention" that will "resolve an issue central to the validity of each one of the claims in one stroke." *Jackson*, 298 F.R.D. at 162. (internal citations omitted).  "Even a single common legal or factual question will suffice."  *Id*. (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

"'In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.'" *Andrade-Barteldes v. Valencia*, No. 23 CV 495, 2023 U.S. Dist. LEXIS 215247, at *9 (S.D.N.Y. Dec. 4, 2023).  "[F]actual differences among the claims of the class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12 CV 7220, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality.").  As described above, Defendants implemented a common policy of misappropriating/retaining tips, paying tipped employees on a biweekly basis, and failing to provide the required wage notices.  In fact, Defendants' own accountant unambiguously stated that Defendants "have been handling the tip system like this since the beginning of Fellini and [they] do it like this throughout all the stores." Erickson Decl. ¶ 17; Allen Decl. ¶ 17; Everett Decl. ¶ 17.

Thus, the following questions of fact or law are common to the Class Members (or potential Subclass Members):

(1) Whether Defendants constituted a single, integrated employer;

(2) Whether the 5% Defendants deducted from Class Members' tips was unlawful;

(3) Whether the $150 Defendants paid their accountant from Class Members' tips each week was unlawful;

(4) Whether Defendants illegally included managers in the tip pools;

(5) Whether Defendants' biweekly pay schedule was unlawful; and

(6) Whether Defendants provided Class Members with wage notices that complied with N.Y. Lab. L. § 195(1).

These questions generate common answers that would drive the resolution of the litigation because, in a single stroke, they can establish that Defendants caused the same injury to Class Members by unlawfully (1) retaining and/or misappropriating Class Members' tips; (2) paying Class Members on a biweekly basis; and (3) failing to provide the wage notices required under N.Y. Lab. L. § 195(1).

Courts have routinely found commonality satisfied where, as here, food service establishments committed these same violations against a group of employees, even when those violations occurred at multiple locations. *E.g.*, *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21 CV 1347, 2024 U.S. Dist. LEXIS 48475, at *12-17 (S.D.N.Y. Mar. 18, 2024); *Martinez v. Ayken, Inc.*, No. CV 13-7411, 2016 U.S. Dist. LEXIS 25556, at *28-30 (E.D.N.Y. Feb. 29, 2016); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531, at *12-13 (S.D.N.Y. July 24, 2015) (Sullivan, J.); *see also*, *e.g.*, *Shahriar*, 659 F.3d at 252; *Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 376 (S.D.N.Y. 2017); *Megason*, 2014 U.S. Dist. LEXIS 3910, at *21-23. Accordingly, Plaintiffs have established that commonality is satisfied.

### c.   Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system.'" *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y.

2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux*, 987 F.2d at 936-37; *see also Whitehorn v. Wolfgang's Steakhouse, Inc*., 275 F.R.D. 193, 199 (S.D.N.Y. 2011). Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *13; *see also*, *e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted).

The commonality and typicality "'requirements tend to merge into one another.'" *Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *12. Because, as discussed with respect to commonality, all Class Members were subject to the same employment policies, typicality is easily satisfied. *E.g.*, *id*. at *16-17; *Velez*, 2016 U.S. Dist. LEXIS 107230, at *69; *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *28-30; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### d.  Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiffs are

prepared to act as class representatives, have no conflict with any Class Members, and will fairly and adequately protect the interests of the Class.  Erickson Decl. ¶¶ 24-26; Allen Decl. ¶¶ 24-26; Everett Decl. ¶¶ 24-26.  Additionally, since the Plaintiffs were subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### e.  Rule 23(a)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011).  Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id.* at 396 (*citing Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 125 (S.D.N.Y. 2014) (quotation omitted).  Here, the proposed Class Members will be easily identifiable from Defendants' records: it is comprised of all tipped employees who worked at any of the three Fellini locations during the limitations period.  As set forth *infra* 18-20, subject to Court approval, Plaintiffs intend to subpoena all Class Members' payroll records from Defendants and third-party payroll providers. The identities of the Class Members will be easily ascertainable from those payroll  records.

15

ii.    **Class Certification Under Rule 23(b)(3) Is Appropriate**

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

**a. Common questions of law and fact predominate**

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees challenging the same allegedly illegal policies and practices. *See, e.g.*, *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018) ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted); *Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *20-22; *Velez*, 2016 U.S. Dist. LEXIS 107230, at *71-72; *Megason*, 2014 U.S. Dist. LEXIS 3910, at *21, 25; *Schear*, 297 F.R.D. at 125-26; *Spicer*, 269 F.R.D. at 338. Here, the common questions identified *supra* will

determine Defendants' liability with respect to the entire Class. Accordingly, common questions predominate.

### b. A class action is superior to other methods of adjudication

Class certification will permit the resolution of dozens of individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits. When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001).

Courts routinely find superiority satisfied where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See, e.g., Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *19 ("[C]ourts in this Circuit have routinely held that class actions are superior method for adjudicating NYLL claims because large numbers of employees are injured by common policies, but the damages suffered are small relative to the burden of individual litigation, meaning class treatment may be the only mechanism for those employees to obtain relief."); *Schear*, 297 F.R.D. at 125; *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *53 (S.D.N.Y. Sept. 29, 2006). Without certification, a host of individuals will lose any practical means for obtaining damages stemming from Defendants' illegal conduct.

In addition, opt-out classes are commonly granted where, as here, some class members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *see also, e.g., Schear*, 297 F.R.D at 126; *Torres*, 2006 U.S. Dist. LEXIS 74039,

at *53-54.  Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class.  *Myers*, 624 F.3d at 547.

### iii.   Plaintiffs' Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs the Court to consider:

(i)      the work counsel has done in identifying or investigating potential claims in the action;
(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)    counsel's knowledge of the applicable law; and
(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).  *See also Andrade-Barteldes*, 2023 U.S. Dist. LEXIS 215247, at *11-12.

Plaintiffs have retained an experienced employment law firm – Joseph and Kirschenbaum LLP ("JK").  Counsel has extensive experience, and JK has been repeatedly appointed as class counsel, including by this Court. *See*, *e.g.*, *Shahriar*, 659 F.3d 234; *Argudo v. Parea Grp. LLC*, 2019 U.S. Dist. LEXIS 163249, at *16 (S.D.N.Y. Sept. 24, 2019); *Megason*, 2014 U.S. Dist. LEXIS 3910; *Schear*, 297 F.R.D at 127.  (*See also* Nussbaum Decl. ¶¶ 7-14.)  Further, Plaintiffs' counsel have zealously prosecuted this action and identified the potential claims and have sufficient financial resources to represent the class. (Nussbaum Decl. ¶¶ 15-16.)  The Rule 23(g) requirements are therefore satisfied by the appointment of Plaintiffs' counsel as class counsel.

### iv.   The Proposed Notice Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as Exhibit 5 to the Nussbaum Declaration is Plaintiffs' proposed class notice, which satisfies all the requirements of Rule 23(c)(2)(B).[3]

---

[3] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:
(i)      the nature of the action;

### C.  The Court Should Permit Plaintiffs To Take Discovery From Defendants And Third-Parties

In addition to seeking class certification, Plaintiffs respectfully request permission to conduct discovery from Defendants and third-parties relating to (1) the identity of members of the Class, and (2) determining the precise amount of damages Plaintiffs will seek in their motion for a default judgment.

Under Federal Rule of Civil Procedure 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  To obtain discovery in advance of such a conference, "the moving party must satisfy a 'flexible standard of reasonableness and good cause.'" *Kreit v. Byblos Bank S.A.L.*, 2023 U.S. Dist. LEXIS 53311, 2023 WL 3005852, at *1 (S.D.N.Y. Mar. 28, 2023) (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (Lynch, J.)).  Pursuant to Federal Rule 55(d)(2): "The court may conduct hearings or make referrals— preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(d)(2).

Courts in this Circuit, including this one, have consistently held that discovery to discern class members' identities and the precise amount of damages is appropriate prior to seeking a default judgment. *See Frankiewicz v. Manhattan Cryobank, Inc.*, No. 20-cv-5157 (JLR) (JW), ECF

---

(ii)    the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)    that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members under Rule 23(c)(3)."

No. 33 (Oetken J.) (Ex. 4); *Katz v. Curis Pharmacy, LLC*, No. 22-CV-644 (VSB), 2023 U.S. Dist. LEXIS 158369, at *18-19 (S.D.N.Y. Sep. 7, 2023) ("district courts in numerous circuits have authorized discovery against a non-appearing defendant in support of a class certification investigation"); *Henriques v. William James Bushell Corp.*, No. 23-cv-2990 (LJL), 2023 U.S. Dist. LEXIS 155157, at *3-4 (S.D.N.Y. Sep. 1, 2023) ("there exists good cause for limited discovery to identify class members […] and to determine damages.").

Moreover, Courts, including this one, authorize Plaintiffs trying to secure a default judgment to take discovery from third-parties. *Frankiewicz*, No. 20-cv-5157 (JLR) (JW), ECF No. 33 (Oetken J.) (authorizing plaintiffs "to take discovery as needed") (Ex. 4); *Holness v. Nat'l Mobile TV, Inc.*, No. 09 CV 2601 (KAM)(RML), 2011 U.S. Dist. LEXIS 28627, at *9 (E.D.N.Y. Jan. 6, 2011) ("Because plaintiff does not have all the information necessary to establish his economic damages at this time, I hereby grant him leave to conduct third-party discovery") *report and recommendation modified by, in part, adopted by, in part by Holness v. Nat'l Mobile TV, Inc.*, 2011 U.S. Dist. LEXIS 28624 (E.D.N.Y., Mar. 21, 2011).  Accordingly, Plaintiffs respectfully request that the Court enter an Order authorizing Plaintiffs to take discovery on an as needed basis from Defendants and any relevant third-parties.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court certify the NYLL claims in this case as a class action under Rule 23 and permit Plaintiffs to take discovery regarding damages and the identities and contact information of Class Members.

Dated:  New York, NY
   June 11, 2025

        By: _s/ Josef Nussbaum_
          D. Maimon Kirschenbaum
          Josef Nussbaum
          **JOSEPH & KIRSCHENBAUM LLP**
          32 Broadway, Suite 601
          New York, NY 10004
          (212) 688-5640 Phone
          (212) 981-9587 Fax

          *Attorneys for Plaintiffs and proposed Class*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 6324 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: June 11, 2025                    By:    s/ *Josef Nussbaum*
                                              Josef Nussbaum