UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANCE ERICKSON, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FELLINI SOHO CORP. d/b/a FELLINI SOHO, PYRAMID APEX CORP., d/b/a FELLINI WEST VILLAGE, FELLINI CHELSEA CORP., d/b/a FELLINI CHELSEA, and FRANCO NORIEGA,<br><br>Defendants. | Case No. 25-cv-1344 (JPO) |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO VACATE THE CLERK'S DEFAULTS

---

Jed M. Weiss, Esq.
Joshua Bauchner, Esq.
MANDELBAUM BARRETT PC
570 Lexington Avenue, 21st Floor
New York, New York 10022
(212) 324-1877
jweiss@mblawfirm.com
*Attorneys for Defendants*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

PROCEDURAL HISTORY......................................................................................................2

LEGAL ARGUMENT..............................................................................................................3

      I.      STANDARD OF LAW...............................................................................................3

      II.     THE CLERK'S DEFAULTS SHOULD BE VACATED BECAUSE
              DEFENDANTS HAVE APPEARED, ANSWERED, AND ENGAGED
              IN SIGNIFICANT DISCOVERY, THUS THERE IS NO PREJUDICE
              TO PLAINTIFF ........................................................................................................6

CONCLUSION...........................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*,
  92 F.3d 57 (2d Cir. 1996)...............................................................................................5

*Argus Research Group, Inc. v. Argus Securities, Inc.*,
  204 F. Supp. 2d 529 (E.D.N.Y. 2002) ...........................................................................5

*Arthur F. Williams, Inc. v. Helbig*,
  208 F.R.D. 41 (E.D.N.Y. 2002)......................................................................................5

*Barenboim v. Starbucks Corp.*,
  21 N.Y.3d 460 (2013) .....................................................................................................7

*Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.
    Moulton Masonry & Constr., LLC*,
  779 F.3d 182 (2d Cir. 2015)........................................................................................4, 5

*Davis v. Musler*,
  713 F.2d 907 (2d Cir. 1983)........................................................................................4, 6

*Enron Oil Corp. v. Diakuhara*,
  10 F.3d 90 (2d Cir. 1993).............................................................................................4, 5

*Mangahas v. Eight Oranges Inc.*,
  754 F. Supp. 3d 468 (S.D.N.Y. 2024)..............................................................................8

*Meehan v. Snow*,
  652 F.2d 274 (2d Cir. 1981)..............................................................................................4

*N.Y. v. Green*,
  420 F.3d 99 (2d Cir. 2005)................................................................................................6

*Weisel v. Pischel*,
  197 F.R.D. 231 (E.D.N.Y. 2000) .....................................................................................5

*Woodson v. Loram Maintenance of Way, Inc.*,
  10-CV-6263L, 2011 WL 3608232 (W.D.N.Y. Aug. 12, 2011)..........................................6

**Statutes**

Labor Law § 196–d....................................................................................................................7, 8

**Court Rules**

FRCP 55(c) ........................................................................................................................1, 3, 4

## PRELIMINARY STATEMENT

Defendants Fellini Soho Corp., d/b/a Fellini Soho, Pyramid Apex Corp. d/b/a Fellini West Villate, Fellini Chelsea Corp. d/b/a Fellini Chelsea, and Franco Noriago (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to vacate the Clerk's administrative defaults (ECF Nos. 28-31) pursuant to FRCP 55(c).

It is a bedrock principle of law that cases should be decided on their merits, affording all litigants a meaningful opportunity to participate in the legal process. Only instances of willful disregard of the Court and the legal process lead to the Court issuing the draconian sanction of an administrative default. This is not one of those instances.

As detailed below, once Defendants understood the process involved with participating in this lawsuit, they undertook to meaningfully cooperate in every manner possible. Indeed, even Plaintiff **admits** that "Defendants have produced **thousands** of pages of payroll documents in response to requests propounded by Plaintiff. . .". (ECF No. 68) (emphasis supplied). While there may have been some procedural missteps, there was never, not once, a blatant disregard for the Court or the justiciable process that should result in a default judgment outright. Defendants have not only appeared in this case, and answered the Complaint, they have engaged in significant discovery that has actually served to advance Plaintiff's interests. Thus, it cannot be said there is cause for a default judgment here.

For these and the remaining reasons set forth below, Defendants respectfully request that the Court vacate the Clerk's administrative Certificates of Default at ECF Nos. 28-31, along with such other relief as the Court deems just and proper.

1

## PROCEDURAL HISTORY

Plaintiff commenced this action by way of Summons and Complaint on February 14, 2025. (ECF No. 1).  The Complaint consists of a class action wage/hour dispute brought by "tipped employees" of Defendants' coffee shops, including baristas and waitstaff.  *Id.*  According to the docket, Defendants were served with process of the Complaint on February 19 and February 21, 2025.  (ECF Nos. 9 – 12).  On March 31, 2025, the Court, finding that no appearance had been entered by the Defendants, and that Plaintiff had not sought a default, ordered Plaintiff to move for default or the case would be dismissed for failure to prosecute.  (ECF No. 14).

Plaintiff thereafter sought Clerk's Certificates of Default, which were entered by the Clerk of the Court on April 9, 2025 (ECF Nos. 28-31).  Most notably, the entry of the Clerk's administrative Certificates of Default was entered **the day after Plaintiff admits that he was contacted by counsel for the Defendants noting his representation of Defendants in this case**. (ECF No. 67 "April 8, 2025, Attorney Brent Pohlman contacts the undersigned's office and indicates that he represents Defendants"). Plaintiff did not move for a default judgment at that time, instead requesting leave of the Court to file a motion for class certification.  (ECF No. 36). The Court granted Plaintiff's request (ECF No. 37), and Plaintiff brought his motion on June 11, 2025 (ECF No. 38).  Plaintiff's motion for class certification was granted on August 18, 2025, and the Court ordered discovery to proceed (ECF No. 46).

As stated, Defendants retained counsel, Brent Pohlman, of Mandelbaum Barrett, who contacted Plaintiff's counsel and engaged in a dialogue regarding discovery.  Plaintiff memorialized these conversations in a letter to the Court dated September 30, 2025, requesting a conference with the Court to address the outstanding discovery (ECF No. 47).  The Court scheduled the discovery conference for October 21, 2025 (ECF No. 48), and Defense counsel

2

noticed its appearance in this matter October 28, 2025 (ECF No. 49).  On October 31, 2025, the Court held, "Counsel for Defendants having now appeared, the parties are directed to file a joint status letter at the close of class discovery, unless Plaintiffs file a motion for default judgment". (ECF No. 50).

After a slight miscommunication following Mr. Pohlman's departure from Mandelbaum Barrett (ECF No. 60), the parties thereafter engaged in the discovery process, and on March 12, 2026, Defendants filed their Answer and Affirmative Defenses (ECF No. 63), and indeed just two weeks later, Plaintiff provided an update regarding discovery, advising the Court that "Defendants produced class members' outstanding W2 forms and 2025 year-to-date payroll records and a class list. . . The parties also agreed on a stipulation relating to the authenticity of the payroll records Defendants produced thereby obviating the need for depositions."  (ECF No. 64; and "So Ordered" stipulation at ECF No. 68 ("Defendants have produced **thousands** of pages of payroll documents in response to requests propounded by Plaintiff. . .").  In the same letter, Plaintiff represented that he intended to move for a default judgment, but as Defense counsel advised the Court by letter dated March 24, 2026, no agreement by and between the parties was reached regarding any potential motion, and Defendants have complied with all aspects of discovery in this case.  (ECF No. 66).

On March 25, 2026, the Court invited the instant motion to vacate the Clerk's Defaults. (ECF No. 69).

**LEGAL ARGUMENT**

### I.    STANDARD OF LAW

Defendants' failure to answer falls within the scope of Rule 55(c) because Defendants sufficiently demonstrate that the default was NOT willful, setting aside the default would NOT

3

prejudice the adversary, and Defendants demonstrate that they have meritorious defenses. Therefore, this Court should vacate the entry of default.

A clerk's entry of default may be set aside by a court for good cause. Fed. R. Civ. P. 55(c). Generally, "the standard for setting aside the entry of a default pursuant to [Fed. R. Civ. P.] 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by Motion pursuant to [Fed. R. Civ. P.] 60(b)." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). "In other words, 'good cause' and the criteria of the [Fed. R. Civ. P.] 60(b) set side should be construed generously." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

In deciding whether good cause exists, the court examines the following three factors: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron Oil Corp., 10 F.3d at 96.

In applying this analysis, the court must bear in mind the well-established preference for resolving litigation disputes on the merits. *Id*. at 95. "Yet, because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id*. at 96. As the Second Circuit states, **"[t]he extreme sanction of a default judgment must remain a weapon of last, rather than  first, resort, which should only be imposed upon a serious showing of willful default."** *Davis  v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) ("This court has never hesitated to

4

reverse the denial of a motion to vacate a default judgment where further fact-finding was necessary to ensure that substantial justice was served.")

As to the first factor in examining whether good cause exists, willfulness does not include careless or negligent errors even when the negligence is gross. *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) ("[t]hough we have elaborated little on the 'willfulness' standard . . . this Court has recently implied that it will look for bad faith, or at least something more than mere negligence…"). "To find that a default was willful, it must be clear the defaulting party engaged in deliberate or egregious conduct." *Argus Research Group, Inc. v. Argus Securities, Inc.*, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002).  Willfulness "'refer[s] to conduct that is more than merely negligent or careless,' but is instead '**egregious** and not satisfactorily explained.'" *Bricklayers*, 779 F.3d at 186 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)).

As to the second factor, a defense is meritorious where it is "good at law so as to give the fact finder some determination to make." *Am. Alliance*, 92 F.3d at 61. The test to determine whether a meritorious defense has been presented is measured "not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.  Allegations can be found to be meritorious where "they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C.Cir.1980)).

As to the third factor, "[t]o establish prejudice in the context of a default, there must be a showing that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (quoting *Davis*, 713 F.2d at 916) (internal quotation marks

omitted). Mere delay does not constitute prejudice. See *N.Y. v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (affirming grant of motion to vacate default judgment because of, inter alia, lack of prejudice); *Davis*, 713 F. 2d at 916 ("delay alone is not a sufficient basis for establishing prejudice").

A legal defense may also satisfy the meritorious defense element of a motion to set aside entry of default. *See Woodson v. Loram Maintenance of Way, Inc.*, 10-CV-6263L, 2011 WL 3608232, at *1 (W.D.N.Y. Aug. 12, 2011). It is critical to note that a defendant need not "conclusively establish the validity of the defense(s) asserted" for it to qualify as a meritorious defense. *Davis*, 713 F.2d at 916 (2d Cir. 1983).

## II.   THE CLERK'S DEFAULTS SHOULD BE VACATED BECAUSE DEFENDANTS HAVE APPEARED, ANSWERED, AND ENGAGED IN SIGNIFICANT DISCOVERY, THUS THERE IS NO PREJUDICE TO PLAINTIFF

As to the first factor, willfulness, here there is no "deliberate or egregious conduct" leading to bad faith.  Rather the opposite is true.  Defendants are unsophisticated litigants, unaccustomed to the procedural rigors of litigation, particularly federal litigation.  An ECF search does not reveal any recent cases involving the Defendants herein, nor does a search on the New York State system.

As soon as Defendants understood the importance of the instant matter after it was finally brought to their attention, they immediately retained counsel who contacted Plaintiff's counsel and **thereafter significantly participated in the discovery process,** (*See* "So Ordered" stipulation at ECF No. 68 ("Defendants have produced **thousands** of pages of payroll documents in response to requests propounded by Plaintiff. . .")  Discovery has been produced, Defendants have answered the Complaint and continue to engage.  There is no question that Defendants are actively engaged in this litigation, and any delay was not the result of willful or contumacious conduct that would result in a judgment on default.

As to the second factor, Defendants have meritorious defenses to the claims in the Complaint. For example, Plaintiff alleges that certain "management level employees" impermissibly participated in the tip pool. Defendants deny said allegations because, even if the "management level employees" alleged and identified in the pleadings participated in the tip pool, those employees exercised no "meaningful authority" and were therefore not ineligible to participate in any tip pool. Indeed, pursuant to N.Y.L.L. § 196-d, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

The New York Court of Appeals has explained that "an employee's ability to participate in a tip pool under [] Labor Law § 196–d shall be based upon duties and not titles." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471 (2013). Further, some degree of "supervisory authority over other waitstaff, [] does not, by itself, render [employees] sufficiently dissimilar to waiters and busboys so as to preclude their participation in tip pools." *Id.* at 472. Instead, the New York Court of Appeals has made clear that "the line should be drawn at meaningful or significant authority or control over subordinates," and not whether that employee has "final authority." *Id.* at 473.

"Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation." *Id*. In other words, "[a]n employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip-allocation arrangement under Labor Law § 196–d, even if that employee possesses limited supervisory responsibilities." *Id.* "But an employee

granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196–d and, consequently, is not eligible to participate in a tip pool." *Id*.; *see also Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 503-04 (S.D.N.Y. 2024) (applying the "meaningful authority" test to hold that certain team leaders were ineligible for the tip pool because they were responsible for hiring, firing, disciplining, scheduling, and determining compensation).

Here, the Complaint claims Defendants violated provisions of New York Labor Law related to tip pooling, alleging "[t]he coffee shops also force tipped employees to share their tips with management level employees," and that "[t]hese management level employees include, for example, Lina Jaramillo and Ezgui Ozlu." *See* Compl. ¶¶ 40-41. However, neither Jaramillo nor Ozlu have "meaningful authority" over any other employees, because neither participate or have any authority in hiring or terminating employees. Defendants therefore have meritorious defenses to the claims and allegations in the Complaint.

Lastly, there is no prejudice to Plaintiff. In fact, the opposite is true. Had Defendants defaulted and never appeared in this action, Plaintiff would not have access to the **<u>thousands</u>** of pages of records that Plaintiff relies on. Defendants' cooperation has actually aided Plaintiff in administering his class, including access to Defendants' payroll records. Accordingly, Plaintiff cannot be heard to complain regarding any potential prejudice because there is no "loss of evidence"; rather, because of Defendants' participation in this litigation there is now an abundance of it.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court grant the

instant motion to vacate the Clerk's Defaults, along with such other relief as the Court deems just

and proper.

Dated: New York, New York            MANDELBAUM BARRETT PC
April 3, 2026            By:    /s/ Jed M. Weiss, Esq.
                                    Jed Weiss, Esq.
                                    Joshua Bauchner, Esq.
                                    570 Lexington Avenue, 21st Floor
                                    New York, New York 10022
                                    Phone: 212-324-1877
                                    Email: jweiss@mblawfirm.com

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing memorandum of law complies with Local Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The within Memorandum of Law was prepared using Microsoft Word, with Times New Roman typeface, in 12-point font. The within Affirmation contains ____ words as calculated by the word-processing system used to prepare the document, exclusive of the caption, table of contents, table of authorities, and signature block.

Dated: New York, New York
      April 3, 2026

MANDELBAUM BARRETT PC

By:   /s/ Jed M. Weiss, Esq.
      Jed Weiss, Esq.
      570 Lexington Avenue, 21st Floor
      New York, New York 10022
      Phone:  212-324-1877
      Email:  jweiss@mblawfirm.com

10